Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8972 | **DATE** | 3/31/2003 |
| **CASE TITLE** | MAUREEN A. NAVARRO vs. FEDERAL DEPOSIT INSURANCE CORP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant Chicago Community Bank's motion to dismiss is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 0 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| MAUREEN A. NAVARRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 02 C 8972 |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | Honorable Charles R. Norgle, Sr. |
| CORPORATION, UNIVERSAL FEDERAL ) | |
| SAVINGS BANK, formerly known as ) | |
| UNIVERSAL SAVINGS AND LOAN ) | |
| ASSOCIATION, and CHICAGO ) | |
| COMMUNITY BANK ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

DOCKETED
APR 0 1 2003

CHARLES R. NORGLE, District Judge.

Before the court is Defendant, Chicago Community Bank's, Motion to Dismiss. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND

Plaintiff, Maureen A. Navarro, former President and CEO of Universal Federal Savings Bank, formerly known as Universal Savings and Loan Association, brought this action pursuant to 12 U.S.C. § 1821(d)(6) against Defendants Federal Deposit Insurance Corporation ("FDIC"), Universal Federal Savings Bank ("USFB"), and Chicago Community Bank ("CCB"). CCB now brings this motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.

1

14

Navarro's complaint alleges she was employed by UFSB between the years 1963 and 2002. Navarro began as a part-time clerical staff member and ultimately became the President and Chief Executive Officer of UFSB.

While employed with UFSB, Navarro entered into two contracts providing her with certain severance and retirement benefits. In 1981, Navarro entered into a "Deferred Compensation and Salary Continuation Agreement" with UFSB. Then, in 1987, Navarro entered into a "Defined Benefit Deferred Compensation and Salary Continuation Agreement" with UFSB. Navarro contends that UFSB entered into these agreements (hereinafter collectively referred to as "Deferred Compensation Plans") for the purpose of inducing her to continue to work at the bank. Navarro also asserts that throughout most of her career with USFB, the bank was successful and flourished through her efforts.

In 2002, however, the Office of Thrift Supervision of the United States Department of the Treasury closed USFB. The Resolution Trust Corporation ("RTC") then appointed the FDIC as receiver of USFB. Shortly thereafter, the FDIC as receiver entered into a Purchase and Assumption Agreement ("P & A Agreement") with CCB, thereby allowing CCB to purchase specific assets and assume certain deposits of USFB. On June 27, 2002, Navarro was terminated from her position as President and CEO of UFSB. The following day, when Navarro made a demand for payment to the FDIC under the Deferred Compensation Plans, the FDIC denied both claims. Subsequently, Navarro filed this lawsuit.

## II. DISCUSSION

**A. Motion to Dismiss Under Rule 12(b)(6):**

When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Autry v. Northwest Prem. Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998); it does not decide whether the plaintiff has a winning claim. Herdrich v. Pegram, M.D., 154 F.3d 362, 369 (7th Cir. 1998); see also McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman v. Tarrant County, 507 U.S. 163 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory...."). Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999) (citations and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Id. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See e.g. Jackson v. E.J. Brach Corp., 176 F.3d 977-78 (7th Cir. 1999).

As a general rule, the court must consider only the allegations made on the face of the complaint when ruling on a motion to dismiss. See Fed. R. Civ. P. 12(b)(6). This includes

3

documents the plaintiff has attached to the complaint. See Fed. R. Civ. P. 10(c). If matters outside the pleadings are placed before the district court, the court must convert the defendant's 12(b)(6) motion into a motion for summary judgment under Fed. R. Civ. P. 56. See Carter v. Stanton, 405 U.S. 669, 671 (1972); see also Venture Assoc. Corp. v. Zenith Data Sys.Corp., 987 F.2d 429, 431 (7th Cir. 1993). As an exception to the general rule, the Seventh Circuit has held that documents attached to a motion to dismiss are considered to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. See id. at 431-32; see also Wright v. Associated Ins. Co., Inc., 29 F.3d 1244, 1248 (7th Cir. 1994). Although the plaintiff is under no obligation to attach documents relating to her claim, a defendant may introduce certain documents if the plaintiff has failed to do so. Venture Assoc. Corp., 987 F.2d at 431. "Such documents may be considered by a district court in ruling on the motion to dismiss." Wright, 29 F. 3d at 1248.

## B. Financial Institution Reform Recovery and Enforcement Act ("FIRREA"):

FIRREA controls the sale of the assets of a institution that has been put into receivership by the RTC. See 12 U.S.C. § 1821 *et seq*. It is the RTC that determines which assets and liabilities of a failed thrift should be transferred. Payne v. Security Sav. & Loan Ass'n, 924 F.2d 109, 111 (7th Cir. 1991). FIRREA provides that the "RTC, and not a subsequent purchaser of assets, is the successor to a failed thrift's liabilities unless RTC expressly designates otherwise." Id. Only the liabilities specifically enumerated in a purchase and assumption agreement will be assumed by the purchasing institution, and all other liabilities remain the responsibility of the RTC. Id. FIRREA was designed to facilitate the sale of a failed institution's assets by allowing potential purchasers the opportunity to purchase the assets without assuming all of the additional financial obligations of the failed institution. Payne, 924 F.2d at 111. Thus, FIRREA helps facilitate the purpose behind the

RTC and the FDIC - "to promote stability and confidence in the nation's banking system." See Federal Deposit Insurance Corporation v. Hartford Ins. Co. of Illinois, 692 F.Supp 866, 868 (N.D. Ill. Jul. 27, 1988) (citations omitted).

**1. CCB's Liability Under FIRREA:**

CCB claims it has no obligation to Navarro regarding the Deferred Compensation Plans because CCB did not specifically assume liability for these plans when it entered into the P & A Agreement with the FDIC. See Def.'s Mot. to Dismiss, at 4. CCB further contends that the language in the P & A Agreement specifically excludes the Deferred Compensation Plans at issue. As a result, CCB claims that under FIRREA, even if all of Navarro's allegations are taken as true, she has failed to state a claim for which relief can be granted.

In her response, Navarro claims that nothing in her Complaint indicates that the Deferred Compensation Plans are excluded from the P&A Agreement. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 3. Navarro also contends that even if the court looks beyond the four corners of her Complaint and considers the copy of the P&A Agreement that CCB attached to its Motion to Dismiss, a strong inference exists suggesting that a subsequent agreement between CCB and the FDIC may have been made in which CCB assumed an obligation to Navarro under the Deferred Compensation Plans. Id. Thus, Navarro asserts that unless she has an opportunity to uncover evidence of such an agreement through discovery, the court cannot be sure that such an agreement does not exist in this case.

In reviewing a motion to dismiss, the court merely looks at the sufficiency of the complaint, Swierkiewicz, 534 U.S. at 508, except in cases in which documents attached to a motion to dismiss are considered to be part of the pleadings. See Venture Assoc. Corp., 987 F.2d at 431-32; see also

Wright, 29 F.3d at 1248. Here, although Navarro did not attach a copy of the P & A Agreement between CCB and the FDIC to her Complaint, she does refer to the document within her Complaint. See Pl.'s Compl. ¶ 16. Furthermore, the court concludes that the P&A Agreement is central to Navarro's claim because it is essentially the basis for her claim against CCB. Had CCB not entered into the P&A Agreement with the FDIC, it would not be a party to this lawsuit. Therefore, the court will consider the P&A Agreement attached to CCB's Motion to Dismiss as part of Navarro's pleading in this case. See Venture Assoc. Corp., 987 F.2d at 431-32; see also Wright, 29 F.3d at 1248.

Section 2.4 of the P&A Agreement between CCB and the FDIC, entitled Employee Benefit Plans, states as follows:

> Except as provided in Section 4.12, the Assuming Bank shall have no liabilities, obligations or responsibilities under the Failed Bank's health care, bonus, vacation, pension, profit sharing or stock purchase plans or similar plans, if any, unless the Receiver and the Assuming Bank agree otherwise subsequent to the date of this Agreement.

Def.'s Mot. to Dismiss, Ex. A, at 11. After analyzing the clear language of §§ 2.4 & 4.12, the court concludes that Navarro's Deferred Compensation Plans are not included in the P&A Agreement between CCB and the FDIC. Under FIRREA, the law is quite clear, only the liabilities specifically enumerated in a purchase and assumption agreement will be assumed by the purchasing institution, and all other liabilities remain the responsibility of the RTC. See Payne, 924 F.2d at 111; See also Lawson v. Household Bank, F.S.B., No. 92-3224, 1993 U.S. Dist. LEXIS 4116, at *8 (N.D. Ill. Apr. 1, 1993).

Also, the court is not persuaded by Navarro's argument suggesting that the language in § 2.4 of the P&A Agreement, combined with the language in the agreements between Navarro and USFB regarding assignments of the Deferred Compensation Plans, leads to an inference that CCB ultimately would assume the obligations under the Deferred Compensation Plans. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 3. Navarro presents no facts in her Complaint alleging the existence of any subsequent agreement between CCB and the FDIC regarding the assumption of the Deferred Compensation Plans. Navarro's mere speculation that such an agreement could exist, without alleging any facts to support this notion, is not enough to persuade the court in this case. Nothing presented by Navarro even suggests the existence of an additional agreement, and the defendants have made a good faith statement that no such agreement was ever entered into. In addition, the need for discovery, not argued here, does not excuse the filing of a vacuous complaint. Samuals v. Wilder, 906 F.2d 272, 274 (7th Cir. 1990). Therefore, Navarro has failed to state a claim for which relief can be granted under FIRREA.

**2. Navarro's State Law Claims:**

Navarro also claims CCB interfered with the contracts between Navarro and USFB under two alternative theories: (1) tortious interference with a contract; and (2) failure of a condition precedent. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 4. Having determined there is no federal issue, the court relinquishes pendant jurisdiction over any and all of Navarro's state law claims. It is customary for the Court to do so after resolving all federal claims. See 28 U.S.C. § 1367; see also Bank of California v. Arthur Anderson & Co., 709 F.2 1174, 1175 (7th Cir. 1983) (describing as "virtually mandatory" the relinquishment of pendant jurisdiction after resolution of federal claims); Gonzalez v. City of Chicago, 239 F.3d 939, 942 (7th Cir. 2001) (noting it is proper for the district court to

decline supplemental jurisdiction after all federal claims have been dismissed); O'Grady v. Vill. of Libertyville, 304 F.3d 719, 725 (7th Cir. 2002) (indicating it is reasonable for a district court to decline supplemental jurisdiction after it has dismissed all claims over which it has original jurisdiction).

### III. CONCLUSION

Under FIRREA, Plaintiff's Complaint fails to state a claim against Defendant, CCB, for which relief can be granted. As a result, the court relinquishes pendant jurisdiction over Planitiff's remaining state law claims. For the reasons stated above, CCB's Motion to Dismiss is granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 3/31/03

8